STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-06-16

PORTLAND WATER DISTRICT,

Plaintiff,

v.                                                      ORDER

TOWN OF STANDISH,

Defendant.

The court has considered the submissions of the parties in connection with the Portland Water District's emergency motion for a stay in the above-captioned case.

The focus of the dispute concerns two narrow strips of land, each one-rod wide, adjoining both sides of an existing 6-rod wide town way known as Northeast Road Extension. The two strips of land in question have been the subject of prior litigation between the Water District and the Town. Portland Water District v. Town of Standish, Docket No. CV-04-363 (Superior Court, Cumberland County), appeal pending, Docket No. CUM-05-644. That litigation also concerned the adjacent land located beyond the 6-rod wide Northeast Road Extension and the adjoining two 1-rod strips. The two 1-rod wide strips of land, as well as all of the adjacent land except for the Northeast Road Extension itself, is owned by the Water District.

In the prior action, the court (Humphrey, C.J.) granted summary judgment to the Water District and ruled that neither the Town of Standish nor the public generally had any rights in the two 1-rod strips or in any other land adjoining the Northeast Road Extension. See order filed November 14, 2005 in CV-04-363. In that order the court

specifically found that the Town had failed to demonstrate that there was a material issue of fact for trial as to whether the Water District's ownership of the land adjacent to the Northeast Road Extension was subject to a reservation of rights by the Town to accept an incipient dedication of the two 1-rod wide strips immediately adjoining Northeast Road. November 14, 2005 Order at 3, 10-11.[1]

The court ruled that the Town's claim that the public had established prescriptive rights on the Water District's land adjacent to Northeast Road during the period subsequent to 1929 was barred by a statutory enactment protecting railroad land from adverse possession and by the rule that adverse possession does not run against the sovereign, which the court found protected the Water District as a quasi-municipal corporation. November 14, 2005 Order at 11-13. The court also concluded that the Town had failed to demonstrate the existence of any genuine issue of material fact on its claim that the public had established prescriptive rights to any of the Water District's land adjacent to Northeast Road prior to 1929. November 14, 2005 Order at 14-15.

The Town filed an appeal and also sought an injunction pending appeal pursuant to M.R.Civ.P. 62(g) to allow the Town to maintain and use the Water District land adjacent to the Northeast Road Extension despite the court's order in favor of the Water District. Chief Justice Humphrey denied that motion, finding that the Town had not demonstrated a likelihood or even a substantial possibility of success on the merits of its appeal. Order filed January 17, 2006 in CV-04-363 at 4-5.

Apparently undeterred by the court's November 14, 2005 and January 17, 2006 orders in CV-04-363, the Town on March 14, 2005 nevertheless undertook to "accept"

---

[1] To the extent that a prior order entered by the court on a motion to compel joinder of allegedly indispensable parties suggested that the Town might have retained a reservation of rights to accept the two 1-rod strips, see Order filed March 8, 2005 in CV-04-363, that order has been superseded by the November 14, 2005 order granting summary judgment.

the two 1-rod wide strips of land immediately adjoining the Northeast Road Extension. The Water District now asserts – and the Town confirmed at a scheduling conference held on April 6, 2006 – that the Town plans to enter and make improvements on the two 1-rod wide strips pursuant to its purported "acceptance."

The parties agree that the governing law on a motion for a stay is that the party seeking a stay must demonstrate (1) that it will suffer irreparable harm in the absence of a stay; (2) that such injury outweighs the injury that a stay would inflict on the opposing party; (3) that the party seeking a stay has demonstrated a likelihood of success on the merits; and (4) that the public interest would not be adversely affected by a stay. E.g., Bangor Historic Track, Inc. v. Department of Agriculture, Food, and Rural Resources, 2003 ME 140 ¶ 9, 837 A.2d 129, 132.

In this case the court concludes that the Water District has more than adequately demonstrated a likelihood of success on the merits. The merits have already been litigated in CV-04-363 and the Water District prevailed.[2]

Second, if the Town were permitted to enter and make improvements on the Water District's land, that would constitute irreparable harm to the Water District. Where real property is involved, a trespass that results in any alteration or encroachment on the land has been found to constitute irreparable injury. E.g., Walsh v. Johnson, 608 A.2d 776, 778 (Me. 1992).

In this instance, moreover, the stay sought by the Water District has the effect of preserving the effectiveness of the judgment in CV-04-363 while an appeal is pending. The court can find no justification for actions by the Town that are in derogation of the

---

[2] Indeed, at this point, even though an appeal is pending, the judgment of the court in CV-04-363 is entitled to *res judicata* and collateral estoppel effect. See Restatement (Second) of Judgments § 13, comment f; 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 4433 at 78-79 and cases cited at n. 12.

court's decision in the prior action. The Town is not entitled to proceed as if the prior action had not been decided against it or to unilaterally alter the status quo established by Chief Justice Humphrey's decision. If the decision in CV-04-363 was incorrect, the Town's remedy is to appeal. Until and unless the judgment in CV-04-363 is reversed or modified, however, it is entitled to respect.

The court finds that the remaining criteria for a stay have also been satisfied. It cannot be persuasively argued that the harm to the Town from the grant of a stay would exceed the potential harm to the Water District if a stay is not granted because the Town is not harmed by being prevented from taking action it has no legal right to perform. Similarly, while both sides have argued that the public interest favors their position,[3] the Town cannot legitimately contend that the public interest allows it to violate the Water District's legally protected rights as determined by the court in CV-04-363. In this case the public interest lies in preserving the effectiveness of the judgment entered in CV-04-363 until the appeal is decided.

There are several other issues that should be addressed. The court agrees with the Town that to the extent that the Water District is seeking a stay or injunction with respect to the adjacent property outside of the two 1-foot wide strips, such a request for relief falls outside of the parameters of this action, which at this point seeks review only of the Town's "acceptance" of the two 1-rod strips adjoining Northeast Road.[4] However, the court agrees with the Water District that, given the Town's apparent desire to take unilateral action and the need for two public entities to cooperate and

---

[3] The Water District argues that the public interest lies in preserving its ability to protect the water quality of Sebago Lake. The Town argues that the public interest favors its ability to accept and improve the two 1-rod wide strips in order to enhance the Northeast Road Extension for safe and convenient travel by the public to the boat launch.

[4] If disputes arise with respect to the adjacent land during the pendency of the appeal in CV-04-363, the Water District's right to seek recourse would include, without limitation, the ability to seek relief under Rule 62(g) in CV-04-363.

4

respect each other's rights and activities, the Town shall be ordered to provide notice to the Water District three business days in advance of any surveying, construction, or improvement activities the Town intends to undertake on the 6-rod wide Northeast Road Extension. This will allow the Water District to monitor those activities and protect against any unauthorized encroachment onto the two 1-rod wide strips that are at issue. It is hoped this will also foster cooperation between the two public entities involved.[5]

The entry shall be:

1.      The Town's March 14, 2006 action accepting the dedication of two one-rod wide strips of land on each side of the Northeast Road Extension is stayed pending the Water District's appeal in this case.

2.      Until the appeal in this case is decided, the Town and its agents and employees are ordered not to enter upon or make improvements upon the two one-rod wide strips in question.

3.      The Town shall provide notice to the Water District three business days in advance of any survey, construction, or improvement work it intends to perform on the six-rod wide Northeast Road Extension.

4.      The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: April _13_ , 2006

_____
Thomas D. Warren
Justice, Superior Court

---

[5] The Water District argues that it should receive seven days notice pursuant to 23 M.R.S.A. § 3022 but that statute would only apply if the Town were altering or widening a public way. As long as the Town keeps within the existing 6-rod width of Northeast Road, as required by this order, it would not be widening or altering Northeast Road within the meaning of 23 M.R.S.A. § 3022.

5

William Harwood, Esq.
Seth Brewster, Esq.
Scott Anderson, Esq.                    Attorneys for Plaintiff


Sally Daggett, Esq.
Kenneth Cole, III, Esq.                 Attorneys for Defendant

STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, ss
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-06-16

PORTLAND WATER DISTRICT,

Plaintiff

v.                                                    DECISION AND ORDER

INHABITANTS OF THE
TOWN OF STANDISH,
                                          DONALD L. GARBRECHT
LAW LIBRARY

Defendant
                                          MAY 16 2007

The plaintiff Portland Water District ("District") brought this Rule 80B appeal challenging the decision of the defendant Town of Standish ("Town") to accept the dedication of a public easement over two one-rod strips of land parallel and adjacent to each side of the Northeast Road Extension ("Disputed Land"). The District alleges that the Town's action violated this court's earlier decision granting the District's motion for summary judgment in *Portland Water Dist. v. Inhabitants of the Town of Standish*, 2005 Me. Super. LEXIS 154 (November 14, 2005), which was affirmed by the Law Court in *Portland Water Dist. v. Town of Standish*. 2006 ME 104, 905 A.2d 829 (collectively, "First Case").

Now pending before the court in this action is the Joint Status Report And Recommendation Of The Parties, which, on its face, purports to ask the court to interpret the First Case. *See* Joint Status Report (September 15, 2006). After

1

conferring with counsel, all agree that the joint report should be treated as the District's motion for judgment as a matter of law, pursuant to M.R. Civ. P. 50(d), on the issue of the res judicata effect of the First Case on the present 80B appeal.

## BACKGROUND

Following the entry of summary judgment in the First Case, but prior to the Law Court's decision on appeal, the Town voted on March 14, 2006 to accept the dedication of the Disputed Land. In response, the District filed this 80B appeal, together with a motion to temporarily enjoin the Town from entering upon or improving the Disputed Land pending resolution of the appeal in the First Case. The motion to temporarily enjoin was granted on April 13, 2006.

Historically, the First Case and this case arise out of an ongoing dispute between the District and the Town over the public's right to park "vehicles and boat trailers on land on both sides of the Northeast Road Extension," a road that provides access to Sebago Lake. *Portland Water Dist.*, 2005 Me. Super. LEXIS at * 3; *see also Portland Water Dist.*, 2006 ME 104, ¶ 2, 905 A.2d at 830. In the First Case, the District originally filed a two-count complaint alleging that it owned fee simple title to the Northeast Road Extension and the land adjacent to it (Count 1), and that the public did not have a prescriptive easement to use that adjacent land (Count 2). *Id.* ¶ 3, 905 A.2d at 831.

2

In the course of the earlier litigation, the court ordered the District to join the heirs of the Proprietors of Pearsontown[1] in its title claim because the proprietors' conveyance to the District's predecessor-in-interest reserved and excepted "what may have been heretofore laid out for Roads and Landings." *Id.* Responding to the court's order, the District filed an amended complaint, which omitted the first count and sought "only a declaratory judgment that the public had not obtained a prescriptive easement over the adjacent land." *Id.* ¶ 4, 905 A.2d at 831.

Subsequently, the District filed a motion for summary judgment in the First Case and the court made several determinations based on the parties' Statements of Material Facts, including the following: The land in dispute in the First Case "lies on both sides of the Northeast Road Extension in the Town of Standish." *Id.* ¶ 6, 905 A.2d at 831. The "Northeast Road Extension was first conceived in 1767, when the Town's proprietors . . . voted to establish it as an eight-rod-wide road." *Id.* The Cumberland County Commissioners redefined the road in 1933 as a six-rod-wide county highway. *Id.* The District obtained title to land "adjacent to and on both sides of Northeast Road Extension" in 1935. *Id.* ¶ 7, 905 A.2d at 831. Since then, "members of the public have used the Northeast Road Extension for access to Sebago Lake and the Town has maintained a boat ramp and some parking in the area without the permission of the [District]." *Id.*

---

[1] Pearsontown is the former name of the Town of Standish.

The court granted the District's motion for summary judgment on November 14, 2005, adjudging and declaring that:

> The public has not acquired, and does not have, any prescriptive rights to cross or use the land of Plaintiff Portland Water District situated in the Town of Standish, County of Cumberland and State of Maine, on the Southerly and Southwesterly shore of Sebago lake, and being adjacent to and on both sides of Northeast Road Extension, so-called, which land of Plaintiff is more particularly bounded and described in two deeds from the Portland and Ogdensburg Railway to Plaintiff, both dated March 23, 1935, and recorded in the Cumberland County Registry of Deeds at Book 1468, Page 487 and at Book 1468, Page 491.

*Portland Water Dist. v. Inhabitants of the Town of Standish*, 2005 Me. Super. LEXIS at *22 (emphasis added).

## DISCUSSION

I.  Law Court's Affirmance of Summary Judgment in the First Case

The Law Court upheld the Superior Court's findings that the Town did not acquire a public easement in the land adjacent to the Northeast Road Extension before the District obtained the land and did not acquire a prescriptive easement after the District obtained it. *Portland Water Dist.*, 2006 ME 104, ¶¶ 12, 13 & 25, 905 A.2d at 832-33, 836. The Law Court noted that "[i]n reaching its conclusions, the court did not adjudicate fee ownership in the disputed land . . . [and that] the court's grant of summary judgment on the count alleging a prescriptive easement was limited to the extent of the [District's] title." *Id.* 2006 ME 104, n. 1, 905 A.2d at 832. As a result, the Law Court stated that "[t]o the extent that title remains

4

disputed, it has not been adjudicated, and we do not address the fee ownership here." *Id.*

This caveat, however, merely served to clarify what the Superior Court's decision did and did not address. Because the Law Court affirmed the Superior Court's decision without reservation or modification, the question of what issues, other than those specifically addressed in its opinion, were conclusively barred from future litigation by the Law Court's decision is essentially a question of what issues were decided by the Superior Court. As a result, because the Law Court did not discuss whether the Town had a right to accept an incipient dedication of the Disputed Land, whether or not the Town was precluded from doing so is determined solely by a reading of the November 2005 summary judgment order in the First Case.

## II. Land at Issue in First Case

As an initial matter, the Town makes a distinction in its brief between the "Northeast Road Extension," which it describes as "the 6-rod wide town way" and the "Northeast Road rangeway," which it describes as the "8-rod wide rangeway" laid out by the original colonial settlers of Standish. (Def.'s Br. at 1.) Based on this distinction, the Town argues that the Superior Court's decision in the First Case did not preclude it from accepting a public easement over the Disputed Land because "[t]he land in dispute in the earlier action is adjacent to the Northeast Road

rangeway but not adjacent to the Northeast Road Extension town way." (Def.'s Br. at 4.) This assertion is incorrect.

The Adjacent Land, which was the subject of the dispute in the First Case, is land adjacent to the Northeast Road Extension and is the same area referred to as the Disputed Land in this action. In the First Case, this court explicitly stated that the "Adjacent Land" is land of the District that is "adjacent to and on both sides of Northeast Road Extension." *Portland Water Dist.*, 2005 Me. Super. LEXIS at *22; *see also Portland Water Dist.*, 2006 ME 104, ¶ 7, 905 A.2d at 831. Further, that decision referred specifically to a dispute over a segment of the Adjacent Land "two rods [in] width surrounding the current six-rod road." *Portland Water Dist.*, 2005 Me. Super. LEXIS at *15-*16. Contrary to the Town's assertion, the land in dispute in the First Case is the same as the Disputed Land in this case and includes land directly adjacent to the Northeast Road Extension.

III. Town's Right To Accept Incipient Dedication Already Litigated

At its core, the summary judgment order in the First Case settled the District's claim that the Town did not have a right to a non-possessory interest in the Disputed Land. Under Maine law, the public-at-large can acquire a non-possessory interest in land in one of three ways: by the statutory method of layout and acceptance pursuant to *23 M.R.S.A. ß 3022* et seq., by dedication and acceptance, or by prescription. *Stickney v. City of Saco*, 2001 ME 69, ¶ 15, 770

6

A.2d 592, 601 (citations omitted). Although the court's order specifically decided that the Town did not acquire such an interest by prescription, it also impliedly determined that the Town did not acquire an interest by incipient dedication.

The order recited that there was "no material issue of fact as to whether the Town has a claim to a two-rod strip of land adjacent to the Northeast Road [Extension]." *Portland Water Dist.*, 2005 Me. Super. LEXIS at *15. It referenced minutes from a March 31, 1767 meeting of the Proprietors of Pearsontown that tended "to establish that an eight-rod-wide road was voted established according to a plan of that date, where the six-rod wide Northeast Road [Extension] now runs." *Id.* And, it went on to note that, although there was an exhibit establishing the existence of "a September 9, 1997 notice of the Town of Standish's decision to extend the time allowed for it to accept a list of . . . proposed, but as-yet-unaccepted ways . . . [that] list does not include [the Northeast Road rangeway]," nor was there any other evidence to show that the right to accept the Disputed Land was extended under the 1997 notice. *Id.* On those findings, the court could also have concluded that the Town's right to accept the Disputed Land was waived under 23 M.R.S.A. § 3032(1-A).

Further, the Town's argument that its right to accept the Disputed Land could not have been decided in the First Case in the absence of the heirs of the Proprietors of Pearsontown is misplaced. The heirs were deemed necessary parties

for a determination of the District's fee ownership claim to the Notheast Road Extension and to the Adjacent Land. With the elimination of Count 1, the remaining claim regarding the existence of a non-possessory interest in the Town to the Adjacent Land was not dependant upon any potential ownership interest of the heirs and the First Case had no detrimental impact on them.

## IV. Res Judicata/Lack of Incentive to Litigate

Even if the Town's right to accept an incipient dedication was not decided in the First Case, it could have been. Either way, the Town is now legally barred from exercising that right.

> The doctrine of res judicata is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once. The doctrine has developed two separate components, issue preclusion and claim preclusion. Issue preclusion, also referred to as collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding. Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action.

*Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 138-39. The court agrees with the District that a claim preclusion analysis is appropriate here. The same parties are involved in both litigations and there is no dispute that there was a valid final judgment entered in the previous action. Therefore, the only

8

question is whether the Town's right to accept the incipient dedication was or might have been litigated in the First Case.[2]

The doctrine of claim preclusion prevents a party from relitigating "issues that were tried, or that may have been tried, between the same parties or their privies in an earlier suit on the same cause of action." *Norton v. Town of Long Island*, 2005 ME 109, ¶ 17, 883 A.2d 889, 895 (citing *Blance v. Alley*, 1997 ME 125, ¶ 4, 697 A.2d 828, 829). To determine whether a claim is precluded, a transactional test is applied to examine the "aggregate of connected operative facts that can be handled together conveniently for purposes of trial" to determine "if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Id.* ¶ 18,

---

[2] An incipient dedication has been described by the Law Court thus:

> When the owner of land [] divides it into streets and building lots, and makes a plan of the land thus divided, and then sells one or more of the lots, by reference to the plan, he thereby annexes to each lot sold a right of way in the streets, which neither he nor his successors in title can afterwards interrupt or destroy. [S]uch a platting and selling of lots constitute[s] an <u>incipient dedication</u> of the streets to the public, which the owner of the land cannot afterward revoke. The dedication is not complete, and will impose no burden upon the public, till the streets are accepted by competent authority, or the public has used them for at least twenty years. But so far as the owner of the land is concerned, such acts constitute a proposition to dedicate, which he cannot afterward withdraw. Platting alone will have no such effect; but platting and selling will.

*Bartlett v. City of Bangor*, 67 Me. 460, 464-65 (Me., 1878) (emphasis added). However, the dedication "is at best only an inference of law [and the] dedication must be accepted within a reasonable time in order to be effective." *Harris v. City of South Portland*, 118 Me. 356, 359 (Me., 1919) (citations omitted). A reasonable time is determined by the facts and circumstances of each particular case. *Id.* (*e.g.*, forty-three years with no acceptance by Town, either by formal vote or by user, is not a reasonable period of time).

9

883 A.2d at 895 (citing *Draus v. Town of Houlton*, 1999 ME 51, ¶ 8, 726 A.2d 1257, 1260). The subsequent claim is precluded even if it "'relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case.'" *Id.* (citations omitted).

The question, then, is, even if the First Case did not resolve the Town's claim to a non-possessory interest in the Disputed Area based on the theory of incipient dedication, could it have been resolved had the Town presented it in a counterclaim to the District's complaint. The answer is that it could have and, based upon the rules regarding compulsory counterclaims, it should have. M. R. Civ. P. 13(a). With application to this case, Rule 13(a) makes a counterclaim compulsory if the defendant has a claim against the plaintiff that "arises out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim, and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." *Id.* Under principles analogous to res judicata, a defendant who fails to assert a compulsory counterclaim "is precluded from later maintaining another action on the claim after rendition of judgment." *Morse Brothers, Inc. v. Barbet Mason*, 2001 ME 5, ¶ 5, 764 A.2d 267, 269 (citations omitted).

10

In deciding whether the facts of a controversy constitute a "transaction or occurrence," the court must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (citations omitted). In the present case, the Town's claim of a non-possessory interest in the Disputed Land based on a right to accept an incipient dedication arises out of the same "transaction or occurrence" that was the subject matter of the District's prior claim.

The District's claim in the First Case was for a declaration that the Town did not have a non-possessory interest in the Adjacent Land. Its claim arose out of the Town's continued attempts to let the public use the Disputed Land. The particular legal theory espoused by the District, that the Town did not have a prescriptive right to use the area, did not undermine the Town's obligation to advance a counterclaim based on its alternative theory of a right to accept the incipient dedication of a public easement. *Stickney*, 2001 ME 69, ¶ 15, 770 A.2d at 601 (citations omitted). Because the Town did not assert this claim in the prior action, Rule 13(a)(1) now bars it from doing so in the present case.

The Town argues, based on the elimination of Count 1 in the First Case, that it did not, and had no incentive to, litigate whether it had a right to accept the incipient dedication. Specifically, the Town notes that the court's earlier order

11

(March 5, 2005) in the First Case on the Town's motion to dismiss stated that the original deed granting land from the Proprietors of Pearsontown to the District's predecessor in interest reserved from that grant the entire 8-rod width of the Northeast Road rangeway. The court's dismissal order then stated that the

> question that follows is whether, because the Town accepted only 6 rods of the 8 rod road, the remaining two rods may still be accepted. Pursuant to the Town's extension of the time limitations provided under the vacation statute, the Town retains its ability to accept the remaining two rods unless that right lapsed under the common law before the extension was adopted.

(R. at Tab F, pg. 7.)

Read in context, the order on the motion to dismiss, which was directed to the District's failure to join the descendants of the Proprietors of Pearsontown, did not conclusively decide the issue of the Town's right to accept the incipient dedication. The court's ruling on the limited record before it at the time was based on an analysis of the rights of the District and Town in relation to the Proprietors of Pearsontown, not in relation to each other. Further, when the court answered the question of whether the Town, in accepting only 6-rods of the 8-rod rangeway, retained the right to accept the remaining two-rods in the affirmative, this did not mean that the Town in fact could, in the present day, accept those two-rods. Rather, this statement referred to whether by accepting only 6-rods of the 8-rod rangeway, the Town effectively rejected the remaining two rods at that time. The court answered this question in the negative, but did not rule out the possibility that

12

evidence presented at a later point in the litigation could show that the Town lost its right to accept the Disputed Land for other reasons.

The First Case was a declaratory judgment action, which "[t]he Law Court has long held is an appropriate vehicle for establishing rights in real property." *Markley v. Semle*, 1998 ME 145, ¶ 5, 713 A.2d 945, 947 (quoting *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980)). It matters not that the District chose to base its claim on only one of the theories under which the Town might claim a non-possessory interest in the Disputed Area. The Town could have asserted a counterclaim based on the right to accept an incipient dedication even though that would have shifted the burden of proof on that issue to the Town. *Id.* ¶ 5, 713 A.2d at 947 (quoting *Hodgdon*, 411 A.2d at 670-71) ("In a declaratory judgment action, 'the allocation of the burden of proof [] must be determined by reference to the substantive gravamen of the complaint. The party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion.").

In conclusion, the summary judgment order in the First Case, and its subsequent affirmance by the Law Court, establish that the Town's claim of a non-possessory interest in the Disputed Land, including a claim based on the theory of a right to accept an incipient dedication, was decided or could have been decided in

that case. As such, that claim is now barred and cannot be relitigated by the Town in the current action.

Pursuant to Rule 79(a) M.R. Civ. P., the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference, and the entry is

> The decision of the Town Council of the Inhabitants of the Town of Standish accepting the incipient dedication of a public easement over the Disputed Land in this case, being two one-rod wide strips of land parallel and adjacent to both sides of Northeast Road Extension, is VACATED, and this case is remanded to the Town Council for proceedings consistent with this Decision and Order.

Date: February 21, 2006

Thomas E. Humphrey
Chief Justice, Superior Court

14



# STATE OF MAINE
## CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

SETH BREWSTER ESQ
1 PORTLAND SQUARE
PORTLAND ME 04112-586



To:

SALLY DAGGETT ESQ
PO BOX 4510
PORTLAND ME 04112



